FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 12, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

AUGUST S.,

          Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

No. 1:17-cv-03178-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner pauses to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 14, 2014, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of August 1, 2013. Tr. 173-78. The applications were denied initially, Tr. 92-100, and on reconsideration, Tr. 104-10. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 15, 2016. Tr. 36-76. On June 1, 2016, the ALJ denied Plaintiff's claim. Tr. 20-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 14, 2014, the application date. Tr. 22. At step two, the ALJ found that Plaintiff has the severe impairments of depressive disorder and obsessive compulsive disorder. *Id*. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can perform simple and detailed tasks, but might have
> difficulty performing more complex tasks consistently. He can have
> superficial contact with the public, in that he can be around the public
> and interact briefly, but should not perform any face-to-face customer

service or sales jobs.  It would be preferable if [Plaintiff] avoided face-to-face interactions with the public.  [Plaintiff] can perform a low stress job, which I am defining as requiring only occasional decision making and no high production paced tasks such as a high volume assembly line.  [Plaintiff] needs to be in control of his own workflow. The job should be routine with few changes, occasional changes would be acceptable, but less than occasional changes would be preferable.

Tr. 24.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 30.  At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as: janitor, hotel/motel housekeeper, and cleaner II.  Tr. 31.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date the application was filed, May 14, 2014.  *Id*

On August 13, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated lay witness testimony; and

ORDER - 7

3. Whether the ALJ properly evaluated Plaintiff's symptom claims. ECF No. 15 at 3.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of Jay Toews, Ed.D., and Leslie Postovoit, Ph.D. ECF No. 15 at 3-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

### 1. *Jay Toews, Ed.D.*

In October 2013, Dr. Toews conducted a psychological evaluation. Tr. 277-82. Dr. Toews diagnosed Plaintiff with a probable obsessive-compulsive disorder, mild depressive disorder, marijuana abuse in remission, and avoidant traits with dependent features. Tr. 281. Dr. Toews opined that Plaintiff was 1) moderately limited in his ability to sustain attention and concentration due to a history of obsessional thoughts and worries; 2) moderately limited in dealing with the general public; and 3) unable to tolerate more than "very mild work-related stress." Tr. 282.

The ALJ gave Dr. Toews' opinion some weight. Tr. 28. However, the ALJ gave his opinion that Plaintiff can tolerate only "mild work related stress" minimal weight. *Id.* Because Dr. Toews' opinion was not contradicted by another medical

opinion, the ALJ was required to provide clear and convincing reasons for partially rejecting Dr. Toews' opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ gave minimal weight to Dr. Toews' opinion that Plaintiff can only tolerate "very mild work related stress" because that limitation was vague and unclarified. Tr. 28-29 (citing Tr. 282). "An ALJ must set "out a detailed and thorough summary of the facts and conflicting clinical evidence," state her interpretation thereof, and make findings. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (requiring the ALJ to do more than simply state conclusions). In doing so, an ALJ has an independent duty to fully and fairly develop the record. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). This duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision. *Id.*; *Armstrong v. Comm'r of Soc. Sec.,* 160 F.3d 587, 589–90 (9th Cir.1998). The ALJ may develop the record by scheduling a consultative examination, subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *Tonapetyan,* 242 F.3d at 1150 (citing *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1512. But if the ALJ seeks to develop the record and a claimant fails to participate (without good reason), the Social Security regulations permit an ALJ to make a negative

disability determination.  20 C.F.R. § 416.918(a).  An example of a good reason

for failure to appear for a scheduled consultative examination includes having a

serious illness occur in your immediate family.  20 C.F.R. § 416.918(b)(4).

Here, the ALJ discounted Dr. Toews' stress-related limitation as vague and

unclarified, commenting "What is mild work related stress exactly?"  Tr. 28

(internal quotation marks omitted).  Even if the ALJ deemed Dr. Toews' "stress"

opinion as vague, the ALJ satisfied any duty to fairly develop the record.  Before

the hearing, both a consultative psychological evaluation and a consultative

physical evaluation were scheduled.  Tr. 305-06.  Plaintiff failed to appear for

either.  *Id*.  At the hearing, Plaintiff stated that that he did not attend the evaluations

because he was too worried to leave his pregnant girlfriend alone due to his

concern that she would use drugs.  Tr. 47-48.  Neither at the hearing nor on appeal

has Plaintiff argued that this constitutes good reason to not appear for the

consultative examinations.  Plus, Plaintiff presented no evidence to explain why he

could not have brought his girlfriend to the consultative-examination waiting room

or have a family member stay with his girlfriend during his consultative

examinations.  Moreover, there is no evidence that Plaintiff took steps to

reschedule the consultative examinations after his girlfriend gave birth.  Because

Plaintiff lacked a good reason for failing to take part in the two scheduled

consultative examinations, the ALJ satisfied any duty she may have had to develop

ORDER - 11

the record.[1]  *See, e.g.*, *McCann v. Astrue*, No. EDCV-09-01432-SS, 2010 WL 2803964, at *4 (C.D. Cal. July 15, 2010) (affirming the ALJ's negative disability determination because plaintiff failed to show good cause for failing to attend the consultative examinations); *Kreidler v. Barnhart*, 385 F. Supp. 2d 1034, 1037 (C.D. Cal. 2005) ("Plaintiff's repeated failures to attend the consultative examinations scheduled for her constitute a failure to cooperate sufficient to warrant termination of her disability benefits.").  Under these circumstances, contrary to Plaintiff's suggestion, ECF No. 15 at 8, the ALJ was not required to

_____

[1] While the ALJ found that Plaintiff did not attend either consultative examination, Tr. 20, the ALJ neither specifically discounted Plaintiff's credibility because of his failure to attend the consultative examinations nor based the non-disability determination on Plaintiff's failure to attend the consultative examinations. However, when reviewing the ALJ's decision, the Court must assess whether the ALJ satisfied her responsibility to develop the record.  It is within this context that the Court considers Plaintiff's failure to attend the consultative examinations and what impact Plaintiff's non-attendance had on the ALJ's responsibility, if any, to develop the record further.  As discussed above, because Plaintiff failed to attend the consultative examinations without good reason, the ALJ's responsibility, if any, to develop the record was satisfied.

submit an interrogatory to Dr. Toews to seek clarification. The ALJ did not err in not further developing the record. Moreover, the ALJ discounted Dr. Toews' opinion based on other clear-and-convincing reasons, discussed *infra*.

The ALJ also gave minimal weight to Dr. Toews' opinion that Plaintiff can tolerate only "very mild work related stress" because the limitation was inconsistent with Plaintiff's daily living activities. Tr. 28-29 (citing Tr. 282). An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ found Dr. Toews' opinion that Plaintiff can only tolerate "very mild work related stress" inconsistent with Plaintiff's responsibilities as the primary caretaker for his young daughter and his stressful interactions with the mother of his children (a drug user) and his mother[2] and brother, who both have sought or have obtained disability assistance. Tr. 28. The ALJ found that these relationships required Plaintiff to regularly deal with stress. *Id*.

First, as to Plaintiff's parental responsibilities, the Court finds the ALJ's finding is supported by substantial evidence in the record. The ability to care for

---

[2] The ALJ also mentioned that Plaintiff's "sister" was disabled. This statement was erroneous, as there is no evidence in the record as to Plaintiff's sister. However, as discussed, this erroneous factual statement is inconsequential.

ORDER - 13

others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). For care activities to serve as a basis for the ALJ to discount a claimant's symptom claims, the record must identify the nature, scope, and duration of the care involved, showing that the care is "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). Plaintiff's parenting role is "hands on." Plaintiff has primary custody of his young daughter, who at the time of the ALJ's decision was a toddler. Tr. 49. Plaintiff navigated the state system in order to obtain custody of his daughter, including taking a father-engagement class. *Id.* He changed his daughter's diapers, bathed her, dressed her, read to her, and took her to the park and doctor's appointments. Tr. 49, 54. The ALJ's interpretation of the evidence in regard to Plaintiff's parenting activities, and her decision that these activities involve more than mild stress is rational. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.). This was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Dr. Toews' opinion relating to Plaintiff's stress-limitation.

Second, the Court also finds the ALJ's decision to discount Dr. Toews' opinion that Plaintiff is only able to tolerate very mild work-related stress, because it is inconsistent with the stress that Plaintiff regularly deals with given his familial

and girlfriend relationships, to be a rational interpretation of the record and supported by substantial evidence. This is so, even though the ALJ made an erroneous factual finding by mistakenly referring to Plaintiff's sister as being on disability. *See* Tr. 28. There simply is no evidence in the record as to Plaintiff's sister. Plaintiff also challenges the ALJ's finding that Plaintiff's brother is disabled. *Id.* The record is inconsistent as to whether Plaintiff's brother was or was not receiving disability payments. Tr. 61-62 (applying for assistance), 278 (receiving assistance). Regardless, these factual findings are immaterial to the ALJ's overall decision to discount Dr. Toews' opinion. There is still substantial evidence in the record to rationally find that Plaintiff regularly dealt with stress in his personal life given his child rearing responsibilities identified *supra*, his interactions with his drug-using ex-girlfriend, his disabled mother, and a twin brother who suffers from mental impairments. Tr. 51-52, 61-62, 278. Further, to the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. The ALJ's decision to discount Dr. Toews' opinion as inconsistent with Plaintiff's daily activities is rational and supported by substantial evidence.

Finally, the ALJ also discounted Dr. Toews' opinion as being only somewhat consistent with his clinical observations. Tr. 28. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate

reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Toews noted that Plaintiff "evidences no symptoms or medical problems that would interfere with his ability to show up for work and to complete a full work day or work week." Tr. 282. Additionally, Dr. Toews reported that Plaintiff arrived promptly and independently; was personable, pleasant, and cooperative, although anxious and nervous; interacted appropriately; and maintained good eye contact. Tr. 277, 280-81. Although Plaintiff reported to Dr. Toews that he was preoccupied with worries and anxieties, Plaintiff advised he was able to perform personal care, prepare simple meals, do light housekeeping, pull weeds, do his own laundry, shop independently, and applied for work at Labor Ready. Tr. 279-81. While Plaintiff had a fair to poor fund of information, his speech was normal and thinking coherent and logical. Tr. 280-81. The Court finds the ALJ's decision to discount Dr. Toews' opinion as being only somewhat consistent with his clinical observations is rational and supported by substantial evidence.

Moreover, the ALJ rationally translated and incorporated Dr. Toews' opinion when developing the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the

assessment is consistent with restrictions identified in the medical testimony.").

For instance, the ALJ included the following limitation in the RFC:

> [A] low stress job . . . requiring only occasional decision making and no high production paced tasks such as a high volume assembly line. The claimant needs to be in control of his own workflow. The job should be routine with a few changes, occasional changes would be acceptable, but less than occasional changes would be preferable.

Tr. 24. This RFC is consistent with Dr. Toews' accepted findings, including his finding that Plaintiff "evidences no symptoms or medical problems that would interfere with his ability to show up for work and to complete a full work day or work week." Tr. 282. The Court finds this RFC adequately translated and incorporated Dr. Toews' accepted findings. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Plaintiff also argues the ALJ erred by failing to discuss Dr. Toews' GAF[3] (Global Assessment of Functioning) score. ECF No. 15 at 5-6. The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. 65 Fed.

---

[3] The GAF Scale measures "the clinician's judgment of the individual's overall level of functioning" as to "psychological, social, and occupational functioning," but not "impairment in functioning due to physical (or environmental) limitations." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, at 32 (4th ed. Text Revision 2000); *see Morgan,* 169 F.3d at 598, n.1.

Reg. 50746-01, 50765 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing."). The GAF scale is no longer included in the DSM–V. *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders at 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from the DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk and disabilities in its descriptors) and (questionable psychometrics in routine practice.")). As a result, the mere fact that Dr. Toews assessed Plaintiff a low GAF score does not require the adoption of functional limitations stemming therefrom. *See Merritt v. Colvin*, 572 Fed. App'x 468 (9th Cir. 2014). Moreover, any error by the ALJ in failing to discuss whether the GAF score was considered and incorporated into the RFC was harmless because the ALJ provided other clear and convincing reasons, supported by substantial evidence, to discount Dr. Toews' opinion. *See Molina,* 674 F.3d at 1115.

Finally, Plaintiff argues the ALJ failed to apply the appropriate analytical factors, citing 20 C.F.R. § 416.927(c) and *Trevizo*, 871 F.3d 664. ECF No. 15 at 7. The ALJ must evaluate every medical opinion received according to the factors set forth by the Social Security Administration. 20 C.F.R. § 416.927(c). While the ALJ did not detail these factors in chronological order in one paragraph, the ALJ did consider these § 416.927(c) factors:

1) Examining relationship:  The ALJ noted that Dr. Toews was a consultative examiner. Tr. 22;

2) Treatment relationship:  The ALJ recognized that Dr. Toews was a one-time consultative examiner—not a treatment source, Tr. 22;

3 & 4) Supportability and Consistency:  The ALJ discussed that Dr. Toews' opined stress-limitation was vague and unsupported by Dr. Toews' observations and the record as a whole, Tr. 22-23, 26-29; and

5) Specialization:  The ALJ recognized that Dr. Toews had a doctorate in education, Tr. 22.

The ALJ fully considered the applicable § 416.927(c) factors.  The ALJ's decision to discount Dr. Toews' opinion is rationale and supported by clear and convincing reasons, which are each supported by substantial evidence.  *See Hill*, 698 F.3d at 1158.

## 2.  *Leslie Postovoit, Ph.D.*

In November 2013, Dr. Postovoit reviewed the medical evidence of record, which consisted primarily of Dr. Toews' records.  Tr. 283-300.  Dr. Postovoit opined that Plaintiff was 1) markedly limited in the abilities to understand, remember, and carry out detailed instructions, and 2) moderately limited in the abilities to respond appropriately to changes in the work setting, interact appropriately with the general public, complete a normal workday and workweek

without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 297-98.

The ALJ gave some weight to Dr. Postovoit's opinion. Because Dr. Postovoit's opinion was contradicted by another medical opinion,[4] the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Postovoit's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Postovoit's opinion because Plaintiff's daily activities indicated that Plaintiff's limitations were not as severe as assessed by Dr. Postovoit. Tr. 29. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. As discussed above, Plaintiff's daily activities as the primary caretaker for his toddler daughter—and at-that-time soon for his son—conflicted with Dr. Postovoit's marked and moderate limitations. Tr. 47-53. The ALJ's decision to discount Dr.

_____

[4] Dr. Postovoit's opinion that Plaintiff was moderately limited in the ability to complete a normal workday and workweek, Tr. 298, was contradicted by Dr. Toews' opinion that Plaintiff "evidence[d] no symptoms or medical problems that would interfere with his ability to show up for work and to complete a full work day or work week," Tr. 282.

ORDER - 20

Postovoit's opinion is a rational interpretation of the record and supported by substantial evidence. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Plaintiff contends the ALJ failed to give sufficient support to Dr. Postovoit's opinion that Plaintiff would have "some difficulty with complex tasks for a normal work day/week with occasional interruptions from psychological symptoms." ECF No. 15 at 12 (citing Tr. 299 (spelling out abbreviations in original)). Plaintiff relies on the "occasionally" definition in Program Operations Manual System (POMS) Disability Index (DI) 25001.001. *Id.* However, POM DI 25001.001 uses "occasionally" to explain a claimant's exertional limits, *i.e.*, whether claimant is limited to sedentary work. There is no indication that Dr. Postovoit intended this POMS DI 25001.001 "occasionally" definition to apply to her opinion about Plaintiff's nonexertional limitations. Likewise, there is no evidence indicating that Dr. Postovoit considered Plaintiff's potential to have "some difficulty with complex tasks" to be of such severity that Plaintiff is unable to do any kind of substantial gainful work, particularly since Dr. Postovoit found that Plaintiff could manage simple routine tasks and execute detailed instructions. Tr. 299-300.

Moreover, contrary to Plaintiff's position, Dr. Postovoit's moderate limitation in regard to Plaintiff's ability to complete a normal work day/week was reasonably included in the RFC by requiring a low stress, routine job with Plaintiff

controlling his workflow and few changes. *See Stubbs-Danielson*, 539 F.3d at 1174. This RFC is consistent with Dr. Postovoit's opinion that Plaintiff is able to understand and remember simple, routine tasks and execute detailed instructions while limited in the ability to sustain attention and concentration while performing complex tasks. The ALJ's decision will be disturbed. *See Hill*, 698 F.3d at 1158.

**B. Lay Witness Testimony**

Plaintiff challenges the ALJ's treatment of statements provided by Mary Jane Messer, Plaintiff's grandmother. ECF No. 15 at 13-14 (citing Tr. 29-30). Ms. Messer completed a Function Report in 2014, before Plaintiff's daughter was born. Tr. 216-23. Ms. Messer reported that Plaintiff managed his personal care, played video games, swam, got on the internet, handled changes in routine well, and did well with hands-on instructions. Tr. 220-22. Ms. Messer also reported that Plaintiff suffers from anxiety (as he feels he is being judged), gets angry when he does not understand, and sometimes loses concentration. Tr. 216, 218, 221-22. Ms. Messer noted that she usually reminds Plaintiff about his appointments, mentioning though that she does not often see Plaintiff now that he is an adult. Tr. 216, 220.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot establish the existence

of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

### 1. Lack of Treatment

The ALJ discounted Ms. Messer's statements because it did not account for how Plaintiff's symptoms may be impacted by his complete lack of treatment as an adult. Tr. 29. While lay witness testimony as to a claimant's symptoms and limitations is competent evidence, *Nguyen*, 100 F.3d at 1467, an ALJ may discount the stated symptoms and limiting effects if the impairment would be effectively controlled or mitigated by medication or treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040. As discussed below, Plaintiff has not received any mental health treatment as an adult. As a result, the ALJ appropriately discounted Ms. Messer's statements about Plaintiff's symptoms, particularly when Dr. Toews opined that Plaintiff could be helped by cognitive behavioral therapy for anxiety and depression and was a good

candidate for vocational-planning and job-finding assistance. Tr. 281. This was a germane reason supported by substantial evidence to discount Ms. Messer's testimony.

### 2. Nature of Relationship

The ALJ discounted Ms. Messer's statements because Ms. Messer did not routinely observe Plaintiff. Tr. 29. An ALJ may reject the testimony of a lay witness who does not observe the claimant's functional capacity. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Ms. Messer stated that she did not spend much time with Plaintiff now that he is an adult. Tr. 216. As a result, the ALJ appropriately discounted Ms. Messer's statements discussing Plaintiff's limitations in regard to losing concentration and completing tasks. Ms. Messer's lack of first-hand knowledge as to Plaintiff's observed symptoms was a germane reason supported by substantial evidence to discount Ms. Messer's testimony. Moreover, even if the ALJ erred in discounting Ms. Messer's statements because her contact with Plaintiff was not in person, this error is harmless where the ALJ listed additional germane reasons, supported by substantial evidence, for discounting Ms. Messer's testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

### 3. Inconsistent with Plaintiff's Activities

The ALJ discounted Ms. Messer's statements about Plaintiff's symptoms because the reported symptoms were inconsistent with the activities she noted Plaintiff performed. Tr. 29-30. Inconsistency with a claimant's daily activities is a germane reason to reject lay testimony. *Carmickle*, 533 F.3d at 1163-64; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ found that Ms. Messer's reports that Plaintiff's symptoms of anxiety, anger, and limited concentration inconsistent with his personal care, video-game playing, internet surfing, and swimming. Tr. 29-30. This was a germane reason supported by substantial evidence to discount Ms. Messer's testimony. Moreover, the ALJ found that Plaintiff's activities, as described by Ms. Messer, were consistent with the RFC. Tr. 30. The Court finds the ALJ rationally interpreted the record and incorporated Plaintiff's found limitations into the RFC. *See Stubbs-Danielson*, 539 F.3d at 1174. The Court upholds the ALJ's conclusion. *See Burch*, 400 F.3d at 679.

### 4. Relied on Plaintiff's Testimony, which is Inconsistent with the Medical Evidence

The ALJ discounted Ms. Messer's statements because Ms. Messer relied on Plaintiff's subjective complaints rather than objective medical evidence. Tr. 29-30. An ALJ may reject lay testimony that essentially reproduces the claimant's discounted testimony. *Valentine*, 574 F.3d at 694. Moreover, inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See*

ORDER - 25

*Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511-12. Here, because Ms. Messer's statements are similar to Plaintiff's symptom testimony, and, as discussed below, the ALJ properly discounted Plaintiff's symptom testimony for several clear and convincing reasons, including as being inconsistent with the objective medical evidence, the ALJ need only point to the same reasons to discount this lay testimony. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694. This was a germane reason to discount Ms. Messer's testimony.

## C. Plaintiff's Symptom Claims

Plaintiff contends the ALJ failed to rely on clear and convincing reasons in finding his symptom testimony not credible. ECF No. 15 at 16-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[5] SSR 16–3p, 2016 WL

_____

[5] At the time of the ALJ's decision in July 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018, in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c) (1)–(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

At step one of the analysis, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. Tr. 26. At step two, the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms of the impairments as not consistent with medical evidence and other evidence in the record. *Id*.

*1. Lack of Treatment*

The ALJ discounted Plaintiff's symptom claims because he has had no treatment and medication as an adult. Tr. 26-27. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating failure to participate in treatment. *Nguyen*, 100 F.3d at 1465.

Here, the ALJ noted that Plaintiff has had no mental health treatment since his benefits ceased in 2013 when he became an adult. Tr. 26. The ALJ mentioned

ORDER - 29

that Plaintiff stated that he did not attend the scheduled mental-health exams because he was concerned about his pregnant girlfriend using drugs and also that he did not know how to get treatment. Tr. 26-27. Based on the entire record, the ALJ's decision to discount Plaintiff's symptoms due to lack of treatment is a rational decision. Plaintiff testified that he knows he needs mental health treatment. Tr. 56. And there is no evidence that Plaintiff's lack of treatment is due to a lack of financial resources as Plaintiff has health insurance. Tr. 27, 46. The record rationally supports a finding that Plaintiff's lack of treatment is due to a lack of motivation, rather than his mental-health impairments, because when Plaintiff is motivated he follows through with appointments, *see, e.g.*, Tr. 49 (following through with court-ordered requirements to obtain custody of daughter); Tr. 52 (taking daughter to medical appointments).

### 2. *Objective Medical Evidence*

The ALJ found Plaintiff's statements about the limiting extent of his symptoms inconsistent with the medical evidence. Tr. 27. An ALJ may not discount a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). But medical evidence is a relevant factor in determining the severity of a claimant's symptoms. *Rollins*, 261

ORDER - 30

F.3d at 857; 20 C.F.R. § 416.929(c)(2).  The ALJ considered that Dr. Toews

reported that Plaintiff arrived promptly and independently to the appointment; was

personable, pleasant, and cooperative (although anxious and nervous); interacted

appropriately; and maintained good eye contact.  Tr. 26 (citing Tr. 277-82).  Here,

the ALJ recognized that Plaintiff had a poor fund of information but performed

well on the mental tests, noting that Plaintiff's thinking was coherent and logical.

*Id.*  The ALJ also noted that Plaintiff's anxiety and obsessive compulsive disorder

were not so severe as to prevent him from obtaining medical treatment for a

shoulder problem in June 2015.  Tr. 27 (citing Tr. 309 ("Psychiatric: Denies

depression, suicidal ideation," and "Psychiatric: Affect normal, judgment normal,

mood normal").  Based on Dr. Toews' observations and findings and the other

medical evidence, the ALJ rationally discounted the severity of Plaintiff's

symptom claims, including his claim that he is unable to maintain a work day or

work week attendance because of his constant anxiousness.  The ALJ's decision

was supported by substantial evidence.

### 3.  Daily Living Activities

The ALJ discounted Plaintiff's symptom claims as inconsistent with his

activities of daily living.  Tr. 27.  A claimant's reported activities can be evaluated

for consistency with reported symptoms.  *Orn*, 495 F.3d at 639.  "While a claimant

need not vegetate in a dark room in order to be eligible for benefits, the ALJ may

discredit a claimant's testimony when the claimant reports participation in . . .

activities that "contradict claims of a totally debilitating impairment." *Molina*, 674

F.3d at 1112-13 (internal citations omitted). The ability to care for others without

help has been considered an activity that may undermine claims of totally disabling

symptoms. *Rollins,* 261 F.3d at 857. For the reasons discussed above, the ALJ's

finding that Plaintiff engaged in "hands on" parenting activities that were

inconsistent with his work-prohibiting symptom claims is a rational finding. *See*

*Trevizo*, 871 F.3d at 675-76. Plaintiff obtained and has primary custody of his

young toddler daughter. Tr. 49. Plaintiff changed his daughter's diapers, bathed

her, dressed her, read to her, and took her to the park and doctor's appointments.

Tr. 49, 54. There is substantial evidence to support the ALJ's decision that

Plaintiff's caretaking activities undermine Plaintiff's claims of totally disabling

symptoms.

Plaintiff contends that he is only able to care for his daughter because he

receives assistance from his family. ECF No. 15 at 18-19. However, a claimant

need not care for a child without assistance in order for the ALJ to find that the

claimant's reported symptoms are inconsistent with child-care activities. Rather,

the question is as identified above, whether the care activities, given their nature,

scope, and duration, contradict claims of a totally debilitating impairment. *Trevizo*,

871 F.3d at 675-76. Here, there is no evidence that Plaintiff's family spent "day

and night" with Plaintiff to help him care for his daughter; instead, the record

reasonably reflects that Plaintiff's care of his daughter contradicts his claim of a

totally debilitating mental impairment. *Cf. id.* The ALJ's decision will not be

disturbed.

### 4. Inconsistent Statements

The ALJ also discounted Plaintiff's symptom claims because his statements

regarding his schooling varied. Tr. 28. In evaluating a claimant's symptom

claims, an ALJ may consider the consistency of an individual's own statements

made in connection with the disability review process with any other existing

statements or conduct made under other circumstances. *Smolen v. Chate*r, 80 F.3d

1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements

concerning symptoms, and other testimony that "appears less than candid.");

*Thomas*, 278 F.3d at 958-59. Here, the ALJ noted the varying answers provided

by Plaintiff regarding his schooling: 1) during the hearing, Plaintiff testified that he

dropped out of school in the eighth grade and never had special education services,

Tr. 41-42 (mentioning also that he later attended a juvenile school); 2) Plaintiff

reported to Dr. Toews that he dropped out of school in the ninth grade, Tr. 279;

and 3) in his disability application, Plaintiff reported he completed the tenth grade,

Tr. 191. The ALJ's finding that Plaintiff offered inconsistent answers regarding

his schooling without any evidentiary explanation for these varying answers is supported by substantial evidence. However, Plaintiff's minor inconsistencies regarding his schooling does not constitute a clear and convincing reason to discredit his symptom claims.

Nevertheless, this error is harmless because, as discussed above, the ALJ lists additional clear-and-convincing reasons, supported by substantial evidence, to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 (An ALJ's error is "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for discounting the claimant's symptom claims did not negate the validity of the ALJ's ultimate decision to discount the claimant's symptom claims).

### 5. *Motivation to Work: Criminal History*

The ALJ also noted that Plaintiff has a prior felony that may impact his ability to obtain work, thereby undermining his claim that mental disorders are the primary reason he is unable to work. Tr. 28. While a claimant's efforts to work are a factor for the ALJ to consider when evaluating the claimant's symptom claims, *Thomas*, 278 F.3d at 959, the Court finds the record does not offer

substantial evidence to support the ALJ's decision to discount Plaintiff's symptom claims on account of his prior felony. There is no evidence that Plaintiff's prior felony impacted his ability to obtain work. In fact, it appears the sole time that Plaintiff took steps to obtain work, Plaintiff was able to obtain employment, reflecting that Plaintiff's prior felony did not present an obstacle to employment. Tr. 43.

Nevertheless, this error is harmless because the ALJ listed other clear-and-convincing reasons, supported by substantial evidence, to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

///

///

///

///

///

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. **JUDGMENT** is to be entered in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED October 12, 2018.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE